UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, | Case No. 23-cv-02483-LB |
| Plaintiff, | **ORDER GRANTING MOTIONS TO DISMISS** |
| v. | Re: ECF Nos. 199, 200 |
| HSBC HOLDINGS PLC, et al., | |
| Defendants. | |

**INTRODUCTION**

This case arises from the collapse of Silicon Valley Bank (SVB) in March 2023, after a run on its deposits. The FDIC was appointed as the receiver and, on March 13, 2023, transferred assets into a bridge bank to protect depositors. Plaintiff First-Citizens Bank & Trust Co. purchased SVB assets from the FDIC on March 27, 2023, thereby acquiring certain contracts and purported trade secrets. It alleges that the HSBC entities and former SVB employees conspired to induce the mass resignation of former SVB employees, in violation of their employment contracts, resulting in misappropriation of the trade secrets and (essentially) the business.

In orders issued in January and July 2024, the court held that First-Citizens plausibly pleaded standing only for conduct occurring after its asset purchase on March 27, 2023, and dismissed (1) claims against certain HSBC entities and employees for lack of personal jurisdiction, (2) contract-based claims against some employees for failure to plausibly plead a breach of the employment

ORDER – No. 23-cv-02483-LB

contracts, (3) the tort claims because they were preempted by California's Uniform Trade Secrets Act (CUTSA), and (4) other common-law tort and contract claims for failure to plausibly plead claims. Three claims survived: claim one for breach of the SVB employment contract (against former SVB senior executive David Sabow) and claims eight and nine for theft of trade secrets under federal and state law (against HBUS, SVB UK, Sabow, and Rebekah Hanlon).[1]

The Second Amended Complaint (SAC) adds jurisdictional allegations and — based on a 2025 assignment from the FDIC in exchange for a 12.5-percent contingency interest in the case — claims against the defendants arising from the federal government's operation of the bridge bank from March 10 to March 27, 2023.[2] The defendants move to dismiss all claims but those that survived the last motions to dismiss. The court grants the motions to dismiss.

First, there is no specific personal jurisdiction against HSBC Holdings plc, HSBC UK Bank plc (HBUK), Melissa Stepanis, Kevin Longo, or Katherine Andersen: the new allegations do not alter the earlier conclusion that there is no forum-directed conduct by these defendants.

Second, for the claims that depend on the FDIC's 2025 assignment, the court assumes without deciding that the FDIC could assign the relevant rights and claims but concludes that the pre-March-27 allegations do not materially change the viability of the claims that the court dismissed earlier under Rule 12(b)(6), including based on CUTSA preemption. The new claim against HBUS for violating the FDIC's confidentiality agreement is not plausibly pleaded because the agreement prohibits only the use of confidential information, not information from independent sources.

The surviving claims are claim two for breach of the employment contract (against Sabow) and claim three for theft of trade secrets in violation of the federal Defend Trade Secrets Act (DTSA) (against HBUS, SVB UK, and Sabow). (Hanlon is not charged in the amended DTSA claim.)

---

[1] Order – ECF No. 71 at 1–4; Order – ECF No. 105 at 1–4. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and, for depositions, to the page numbers and lines in the transcript.

[2] SAC – ECF No. 198 at 14 (¶¶ 28–29); 2025 Assignment Agreement – ECF No. 198-1 at 4 (¶ 2), 5 (¶ 14).

United States District Court
Northern District of California

**STATEMENT**

SVB failed on March 10, 2023, following a run on its deposits by its customers. The FDIC was appointed receiver and operated Silicon Valley Bridge Bank for a short period. On March 27, 2023, First-Citizens purchased certain SVB assets and liabilities through a Purchase and Assumption Agreement with the FDIC. SVB UK collapsed too: the Bank of England seized its assets and, on March 13, 2023, sold SVB UK to HBUK.[3]

The SAC alleges that before and after March 27, 2023, former SVB senior executive (and then SVB UK executive) David Sabow orchestrated a plan known as Project Colony to build an HBSC banking platform by recruiting core SVB employees and using confidential information about the business. HSBC executives allegedly reviewed Project Colony materials, discussed a people-only strategy (instead of bidding for the SVB assets), and recruited numerous former SVB employees. On April 9, 2023, Easter Sunday, starting at 9 p.m., more than forty former SVB employees resigned and moved to HBUS.[4]

In earlier orders, the court held that First-Citizens could pursue claims for conduct on or after March 27, 2023, dismissed claims against foreign and out-of-state defendants for lack of personal jurisdiction, held that the tort claims were preempted by CUTSA, and held that three claims survived: breach of his employment contract (claim one against Sabow) and theft of trade secrets (against HBUS, SVB UK, Sabow, and Hanlon).[5]

In May 2025, the FDIC and First-Citizens executed an assignment agreement whereby the FDIC (1) assigned claims arising from its operation of the bridge bank between March 10–27, 2023, in return for a 12.5-percent contingency interest in the case, and (2) in return for a flat fee, the right to enforce a confidentiality agreement between the FDIC in its corporate capacity and HBUS, executed when the FDIC invited HBUS to consider bidding on SVB assets.[6]

---

[3] SAC – ECF No. 198 at 16 (¶¶ 35–39), 17 (¶¶ 41–42), 24 (¶ 71).

[4] *Id.* at 4–9 (¶¶ 1–11), 23 (¶¶ 63–65). A full account of the SVB collapse, First-Citizens' acquisition, the Project Colony scheme, and the decampment of former SVB employees to HBUS in alleged violation of their contracts is in the earlier dismissal order and is not repeated here. Order – ECF No. 71 at 4–9.

[5] Order – ECF No. 71 at 1–4; Order – ECF No. 105 at 1–4.

[6] 2025 Assignment Agreement – ECF No. 198-1 at 4 (¶¶ 2–3), 5 (¶ 14).

ORDER – No. 23-cv-02483-LB                    3

The SAC has the following claims: (1) breach of the FDIC confidentiality agreement (against HBUS); (2) breach of the employment contracts (against Sabow, Patel, Stepanis, Longo, and Hanlon); (3) theft of trade secrets in violation of the DTSA (against Sabow, Patel, Andersen, and the HSBC defendants); (4) breach of the First-Citizens' new-hire agreements (against Stepanis, Patel, Kidder, Longo, Hanlon, and Andersen); (5) breach of the duty of loyalty (against the same defendants); (6) aiding and abetting the breach of the duty of loyalty (against HSBC defendants and Sabow); (7) tortious interference with contracts (against the HSBC defendants and Sabow); (8) tortious interference with prospective economic advantage (against all defendants); (9) unfair and deceptive trade practices (against all defendants); and (10) civil conspiracy (against all defendants).[7]

The defendants moved to dismiss all claims except claim two for breach of contract (against Sabow) and claim three for theft of trade secrets (against Sabow, HBUS, SVB UK, and Sabow).[8]

## ANALYSIS

The issues are (1) whether there is personal jurisdiction over HSBC Holdings, HBUK, and the out-of-state defendants, and (2) whether First-Citizens plausibly pleaded claims.

### 1. Personal Jurisdiction

### 1.1 Legal Standard

A plaintiff opposing a defendant's challenge to personal jurisdiction must establish that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The court may consider affidavits and other evidence. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). When a defendant relies on written materials, rather than an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Ranza*, 793 F.3d at 1068. Uncontroverted allegations are taken as true, and conflicts between parties —

---

[7] SAC – ECF No. 198 at 43–73 (¶¶ 142–299).

[8] Mots. – ECF Nos. 199–200. Hanlon is no longer a named defendant for claim three. All parties consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c)(1); Consents – ECF Nos. 23, 33, 222.

ORDER – No. 23-cv-02483-LB                    4

such as conflicting statements in affidavits — must be resolved in the plaintiff's favor. *Id.* A court may not assume as true allegations in a pleading that are contradicted by affidavit. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *accord Ranza*, 793 F.3d at 1068 (a plaintiff may not rest on the bare allegations of the complaint).

No federal statute governs personal jurisdiction. California law thus governs. Fed. R. Civ. P. 4(k)(1)(A); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089 (9th Cir. 2023). Its long-arm statute provides for personal jurisdiction to the maximum that due process allows. Cal. Civ. Proc. Code § 410.10; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A court may exercise personal jurisdiction over a nonresident defendant with "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mavrix*, 647 F.3d at 1223 (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction is general or specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). The plaintiff asserts specific personal jurisdiction.[9] The court's specific-jurisdiction inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff must prove the first two parts. *Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015). If it does, then the defendant must present a compelling case that the presence of other considerations renders jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

---

[9] Opp'n – ECF No. 25.

ORDER – No. 23-cv-02483-LB                    5

A plaintiff can satisfy the first requirement by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum," *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017), or "some combination thereof," *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam). For claims sounding in contract, the Ninth Circuit most often applies a purposeful-availment test and, for claims sounding in tort, as First-Citizens asserts, a purposeful-direction test. The rule is not rigid and allows "some combination thereof." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 & n.10 (9th Cir. 2025) (en banc). First-Citizens asserts only purposeful direction.

Purposeful direction exists if the defendant (1) commits an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows will be suffered in the forum. *Washington Shoe*, 704 F.3d at 673. The defendant need not be physically present in the forum state: "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence." *Burger King*, 471 U.S. at 476. Instead, the so-called *Calder* effects test focuses on the forum where the defendant's acts were felt, whether or not the acts themselves occurred in the forum. *Mavrix*, 647 F.3d at 1228. There is personal jurisdiction when the acts are such that the defendants "must reasonably anticipate being haled into court" in the forum to answer for their acts. *Calder v. Jones*, 465 U.S. 783, 788–91 (1984) (cleaned up) (asserted specific jurisdiction over the non-resident National Enquirer for a libelous story distributed in California about a well-known California actor because the acts were aimed at California, and the actor suffered injury here). "[R]eferring to the *Calder* test as an effects test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong — the effects prong — holding that something more is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (cleaned up).

Then, as to prong two of the specific-jurisdiction test, the issue is whether the plaintiff's claims arise out of or are related to the defendants' contacts with the forum. *Ford Motor Co. v. Mont.*

ORDER – No. 23-cv-02483-LB                6

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4ᵗʰ 972, 983 (9th Cir. 2021). "[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 582 U.S at 262 (cleaned up). Ninth Circuit precedent before *Ford* required a showing of but-for causation. *Ayla*, 11 F.4th at 983 n.5. In *Ford*, "[t]he Supreme Court announced . . . that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts[] even absent causation." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023). Thus, a showing of but-for causation is permitted, but not required, to satisfy prong two. *Ayla*, 11 F.4th at 983 n.5.

## 2.  Application

The issue is whether First-Citizens has added additional jurisdictional allegations supporting personal jurisdiction over foreign entities and out-of-state defendants that defeat the earlier dismissal for lack of personal jurisdiction.[10] It has not.

### 2.1  HSBC Holdings and HBUK

The court's earlier order summarized jurisdictional facts and concluded that there was no personal jurisdiction. In short, personal jurisdiction depended on involvement by executives based in the U.K. and Hong Kong who allegedly worked for HSBC Holdings or HBUK. But the executives (Noel Quinn, Michael Roberts, Ian Stuart, and Stuart Tait) did not work for or represent either entity. Also, mere communications about Project Colony did not establish purposeful direction.[11] The court allowed jurisdictional discovery. The SAC adds additional facts.

Sabow pitched Project Colony to Quinn (employed by HSBC Group Management Services, Ltd., not HSBC Holdings). Quinn allegedly directed George Elhedery (also employed by HSBC Group) to proceed with the scheme (the people-only option) as a low-cost entry to the innovation

---

[10] Order – ECF No. 105 at 3–4.

[11] *Id.* at 3–4, 9–14, 17–19 (incorporated herein fully by this reference).

United States District Court
Northern District of California

banking industry on the West Coast, where HSBC lacked a meaningful presence. Quinn signed off on the $44.5 million budget needed to carry out the scheme.[12] First-Citizens contends that the defendants' declarations — that the involved executives (Quinn, Elhedery, Barry O'Byrne (HSBC Holdings), Guyett (HSBC Holdings' CEO for Global Commercial Banking)), and others were not acting on behalf of HSBC Holdings, and instead acted only on behalf of HSBC Group — are not credible. It contends that HSBC Group is just a nickname or moniker, Quinn was appointed to act on behalf of HSBC Holdings, and others (Elhedery, Guyett, O'Byrne, and others) similarly were appointed by the HSBC Holdings board to support the day-to-day operations of the Group CEO.[13] It contends that all executives directed their acts to California. Quinn, for example, recruited Sabow to acquire the California employees and greenlit Project Colony.[14]

The HBUK executives also allegedly conspired to execute Project Colony. Stuart and Tait were authorized to make decisions on behalf of HBUK.[15] They directed their actions toward California because the SVB global strategy would benefit from raiding Bridge Bank and First-Citizens' employees.[16]

There is no personal jurisdiction over HSBC Holdings or HBUK.

First-Citizens' allegations regarding personal jurisdiction for HSBC Holdings are in three categories. None suffices.

First, First-Citizens claims that Quinn personally recruited Sabow to acquire California employees.[17] The allegations do not support that conclusion. Sabow became an HBUK employee

---

[12] SAC – ECF No. 198 at 21–22 (¶¶ 57–59), 23 (¶¶ 63–64), 28 (¶ 89), 30–31 (¶¶ 93–94).

[13] Opp'n – ECF No. 209 at 7–8 (making this argument); Hemann Decl., Ex. 2 – ECF No. 208-3 at 4 (p. 25:21–24), 9 (p. 78:10–25); Hemann Decl., Ex. 3 – ECF No. 209-4 (Quinn appointed to act on behalf of Holdings).

[14] SAC – ECF No. 198 at 6–7 (¶ 7), 13 (¶ 24), 21–23 (¶¶ 57–63), 24 (¶ 68), 26 (¶ 80), 31 (¶ 95).

[15] *Id.* at 12 (¶ 20).

[16] *Id.* at 25–26 (¶ 77).

[17] Opp'n – ECF No. 209 at 8 (citing SAC – ECF No. 198 at 6–7 (¶ 7), 13 (¶ 24), 21–23 (¶¶ 57–63), 24 (¶ 68), 26 (¶ 80), 31 (¶ 95)).

when HBUK acquired SVB UK.[18] Sabow made the pitch.[19] These are not the "dozens of calls" to "lure away" a California employee still actively employed. *Cf. Fafco, Inc. v. Energy Lab'ys, Inc.*, No. C 09-04861 JW, 2010 WL 11639932, at *3–4 (N.D. Cal. Jan. 27, 2010).

Second, First-Citizens claims that Quinn greenlit Project Colony.[20] The allegations show only comments on a business plan carried out by HBUS, not purposeful direction.[21] These are not hiring decisions aimed at California. The unrebutted testimony of HSBC Holdings' corporate deponent are that Quinn and others provided feedback and perspective to ensure strategic alignment across the enterprise.[22] The emails support that conclusion. In one, Quinn suggested that Guyett discuss with HBUS CEO Michael Roberts whether to take some people. Guyett in turn recommended that Roberts might want to speak with Sabow.[23] In another, Quinn mentioned that he agreed on a "way forward" after communicating with Roberts, the HBUS CEO with authority to hire California employees.[24] Another reflects Quinn's acknowledgment of O'Byrne's notification that the U.S. hires put the Global Commercial Banking cost plan outside of the target range.[25] Mere strategic advice is not a sufficient nexus to the forum. *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 WL 8513082, at *2 (N.D. Cal. Sep. 15, 2020).

Third, First Citizen claims that Quinn "repeatedly reached out to Sabow in California for the purpose of establishing HSBC's new stolen bank in Silicon Valley."[26] The only supporting

---

[18] SAC – ECF No. 198 at 8–9 (¶ 11).

[19] *Id.* at 20 (¶ 54).

[20] Opp'n – ECF No. 209 at 8, 11 (citing SAC – ECF No. 198 at 21–23 (¶¶ 57–59, 63), 39–40 (¶ 123)).

[21] SAC – ECF No. 198 at 21–23 (¶¶ 58 (March 19 email with ideas to address the opportunity from the SVB collapse), 59 (SFB assets purchase through the FDIC auction was not a good fit), 63 (conclusory allegation that Quinn and Elhederly directed HSBC executives employed by "an array of separate entities (O'Byrne, Guyett, Arden, Rius, etc.) to pursue Project Colony"), 39–40 (¶ 123) (Quinn joined Roberts on a Zoom call to welcome new HBUS hires to the HSBC enterprise).

[22] Reply – ECF No. 226 at 8 (citing Rule 30(b)(6) deposition); Long Dep. – ECF No. 200-2 at 17–18 (pp. 99:10–100:2), 30–31 (pp. 135:20–136:7), 34 (p. 214:16–18), 36 (p. 226:12–21)).

[23] Email – ECF No. 208-8 at 2.

[24] Email – ECF No. 208-9 at 2.

[25] Email – ECF No. 208-2 at 2.

[26] Opp'n – ECF No. 209 at 8 (citing SAC – ECF No. 198 at 6–7 (¶ 7), 13 (¶ 24), 23–24 (¶¶ 66–68)).

allegation is that Quinn and others "reached out to and communicated with Sabow," an employee then living and working in London.[27] As the court held previously, the communications do not establish purposeful direction.[28] *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

First-Citizens attributes Quinn's communications to HSBC Holdings based on Quinn's apparent authority to act for it.[29] But the doctrine is meant to protect against a plaintiff's detrimental reliance on a communication made to the plaintiff. *Besser v. Chapple*, No. SACV 09-230 DOC (EX), 2010 WL 370336 (C.D. Cal. Jan. 25, 2010); *Kennedy v. Beardon*, No. 2:20-cv-11483-SVW-MAA, 2021 WL 3557826, at *2 (C.D. Cal. Mar. 30, 2021). The unrebutted testimony is that Quinn lacked actual authority.[30] As the court held earlier, the hiring was in the U.S., and the comments were not within any HSBC Holdings executive's actual authority.[31]

Quinn was appointed to serve as HSBC Group CEO to protect its reputation and develop its strategy, not to undertake budget or hiring decisions for indirect subsidiaries (such as HBUS) operating in specific markets or greenlight the hiring of forty HBUS bankers (among the 200,000 employed worldwide by HSBC affiliates).[32] First-Citizens contends that the reference to "HSBC Holdings plc" in Quinn's and Elhedery's email signatures reflects their actual authority.[33] But discovery does not support the conclusion that HSBC Holdings authorized Quinn or Elhedery to participate in HBUS budget or hiring decisions on HSBC Holdings' behalf.

The same conclusion applies to the other employees identified in the SAC, such as O'Byrne and Guyett. The jurisdictional evidence establishes that they were advisors for Group strategy.[34]

---

[27] SAC – ECF No. 198 at 7 (¶ 7(e)).

[28] Order – ECF No. 105 at 18–19.

[29] Opp'n – ECF No. 209 at 14.

[30] Long Dep. – ECF No. 200-2 at 10 (p. 68:12–24), 11 (p. 72:1–3), 28–29 (pp. 130:23–131:13).

[31] Order – ECF No. 105 at 17–18.

[32] Long Dep. – ECF No. 200-2 at 9 (p. 60:15), 10 (p. 68:6), 32–33 (pp. 190:25–191:11); Emails – ECF No. 200 at 4–5 & 209-4 at 1.

[33] Opp'n – ECF No. 209 at 14. A pre-discovery declaration mistakenly said that Quinn was the CEO of HSBC Holdings. Alioto Decl. – ECF No. 81-2 at 3 (¶ 11). The court allowed discovery to establish jurisdictional facts. The mistaken declaration does not alter the conclusion that recruiting forty bankers in California was not part of Quinn's authority.

[34] Forbes Decl. – ECF No. 200-3 at 3–4 (¶¶ 7–9); Mot. – ECF No. 200 at 14.

United States District Court
Northern District of California

No fact allegations support the conclusion that any Group executives had recruitment authority. "Group" refers to the global enterprise: HSBC Holdings with all subsidiaries. HSBC Holdings is the parent entity within HSBC Group: it does not offer banking services or have clients and instead holds subsidiary shares and performs discrete functions.[35]

For HBUK, no evidence establishes that it purposefully directed any actions toward California. *Walden*, 571 U.S. at 285. HBUK was created to comply with U.K. legislation requiring large banking groups to "ring-fence" core U.K. retail banking into a separately incorporated banking subsidiary, which is why HBUK has no offices, employees, or clients in California.[36] Emails involving HBUK executives do not establish purposeful direction here either. One from Stuart is about global hiring.[37] Another from Tait observes that "global connectivity in this sector" would "send a very positive message into the U.K. tech market."[38]

Other discussions involve monitoring or discussing the actions of others, not directing actions toward the forum. Stuart asked Roberts, the HBUS person with authority to hire, about the status of HBUS's recruiting efforts in the U.S.[39] Rius (at HBUS) thanked two HBUK HR employees for leaning in for HBUS, and one (Bosi) applauded their teamwork.[40] No one at HBUK participated in recruiting or hiring HBUS employees.[41]

In sum, HBUK executives participated only in global discussions about HBUS's hiring plan. This is not purposeful direction at the California forum.

---

[35] Long Dep. – ECF No. 208-3 at 8 (p. 77:12–17), 12 (p. 120:14–21); Long Dep.– ECF No. 200-2 at 3 (p. 25:16–24); Mot. – ECF No. 200 at 10–12; 2012 DPA – ECF No. 209-7 at 1 (defining HSBC Group as HSBC Holdings and its subsidiaries).

[36] Strybel Decl. – ECF No. 81-1 at 2 (¶ 6); Suppl. Resps. to Interrogs. – ECF No. 200-4 at 26 (p. 25).

[37] SAC – ECF No. 198 at 25 (¶ 75) (discussing the best entity to hire former SVB employees in Israel).

[38] *Id.* at 25–26 (¶ 77).

[39] Email – ECF No. 208-14; Long Dep. – ECF No. 208-3 at 18 (p. 214:16–18).

[40] SAC – ECF No. 198 at 25 (¶ 76).

[41] Reply – ECF No. 226 at 14 (addressing and disposing of ¶¶ 77, 89, and 114, which allow no conclusion other than HBUS had the authority to hire and recruit, not HBUK).

United States District Court
Northern District of California

**2.2  Individual Defendants Stepanis, Longo, and Andersen**

The court's earlier order summarized jurisdictional facts and held that there was no personal jurisdiction. In short, the employees did not purposefully direct any conduct at California.[42] The court allowed jurisdictional discovery. The SAC adds additional facts.

Stepanis learned about Project Colony by at least March 19, 2023, when Sabow sent her the plan via email and invited her to a March 21 meeting to discuss it. There, he asked meeting attendees to help recruit "30, 40, 50" people.[43] She worked with Sabow, the other individual defendants, and the HSBC defendants to recruit at least five California-based employees to join HBUS and to identify potential executives in Northern California. She advocated to move California employee Paige Preston from Patel's team to Stepanis's team at HBUS because she needed Preston as a "utility player."[44] Andersen learned about Project Colony through the invitation to the March 21 meeting, attended it, recruited at least two California-based employees, and accessed spreadsheets and confidential information.[45] Longo similarly attended the March 21 meeting and recruited at least two California-based employees.[46]

There is no personal jurisdiction over the individual defendants. The complained-of activity is HBUS's and Sabow's targeting of California. Functionally, the allegations are the equivalent of those previously held insufficient. That three employees did some recruiting does not establish individual personal jurisdiction over them. Allegations of "an orchestrated scheme directed at a California employer to poach its employees, steal confidential information, and appropriate its business" might establish specific jurisdiction over an out-of-state aggressor, but, as the court held previously, the allegations do not rise to that level here.[47] *Weisel Partners LLC v. BNP Paribas*, No. C 07–6198 MHP, 2008 WL 3977887, at *6 (N.D. Cal. Aug. 26, 2008).

---

[42] Order – ECF No. 105 at 14–17, 20.

[43] SAC – ECF No. 198 at 26–27 (¶¶ 82–83).

[44] *Id.* at 10 (¶ 14), 13–14 (¶ 25), 33–34 (¶ 100).

[45] *Id.* at 9 (¶12), 26–27 (¶ 82), 31–32 (¶ 96), 55–56 (¶ 199).

[46] *Id.* at 26–27 (¶¶ 82–83), 34 (¶ 101).

[47] Order – ECF No. 105 at 20.

### 3.  Failure to State a Claim

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them favorably to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[48]

### 3.1 CUTSA Preemption (Claims Five Through Ten)

The defendants contend that the state tort claims (five through ten) are preempted by CUTSA because they rest on the same nucleus of facts as the trade-secret theory.[49] First-Citizens responds that the tort claims rest on independent disloyal conduct: competing while still employed, recruiting colleagues while owing duties to the employer, concealing the plan, and orchestrating a coordinated mass departure.[50] The defendants respond that the SAC still ties the wrongdoing to Project Colony, confidential information, and the alleged theft of the SVB business model.[51] Because the tort claims rest on the trade-secret theory, CUTSA preempts them.

CUTSA displaces civil claims based on misappropriation of trade secrets or on the same nucleus of facts as trade-secret misappropriation.[52] *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citing Cal. Civ. Code § 3426.7 and *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *as modified on denial of reh'g* (May 27, 2010)). At the

---

[48] The court assumes without deciding that the FDIC assignment is valid and resolves the claims on Rule 12(b)(6) grounds. Also, even though the lack of personal jurisdictional is a threshold inquiry, the court addresses the claims on the merits (as the parties do).

[49] Mots. – ECF Nos. 199 at 17–20 & 200 at 26–29.

[50] Opp'ns – ECF Nos. 204 at 29–32 & 209 at 24–28.

[51] Replies – ECF Nos. 225 at 9–11 & 226 at 15.

[52] Order – ECF No. 105 at 22–24 (setting forth a fuller analysis of the relevant case law).

pleading stage, the question is whether, if the trade-secret facts are stripped away, the remaining allegations independently support another tort. *Id.* Claims based on distinct conduct, such as certain forms of competition while still employed, may survive where they do not depend on the same trade-secret nucleus. *Arthur G. Gallagher & Co. v. Tarantino*, No. 20-cv-05505-EMC, 2022 WL 4092673, at *9–10 (N.D. Cal. July 27, 2022).

Like the earlier complaint, the pleaded tort theories are not independent from the trade-secret theory in any meaningful way and rely on the same core theory: the defendants used confidential and trade-secret information to execute Project Colony by not buying assets, instead recruiting SVB employees, all to build a competing business line. The SAC alleges coordination and conspiracy, but those allegations are not separate from the core theory of misuse of confidential information.

A merits review of the individual tort claims supports this conclusion.[53]

For tortious interference with contract (claim seven against the HSBC defendants and Sabow), First-Citizens does not plausibly allege that the HSBC defendants or Sabow had knowledge of the contractual obligations under the SVB contract or the new-hire forms.[54] It argues that the defendants were familiar with industry practices.[55] Generalized industry awareness of confidentiality agreements does not plausibly allege knowledge of a specific contract. *Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*, No. CV 15-07936 SJO (GJSx), 2016 WL 8857029, at *5 (C.D. Cal. Feb. 2, 2016); *GSI Tech. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2014 WL 1572358, at *7 (N.D. Cal. Apr. 18, 2014). It claims that HSBC defendants knew that First-Citizens was enforcing non-solicitation provisions but cites no facts to support that conclusion.[56] It cites one email expressing concern about the propriety of recruiting SVB employees, but that email predates the execution of the New Hire forms. The allegations imply only that HBUS understood that the individual defendants had contact with First-Citizens.[57]

---

[53] The legal standards for the claims are in the earlier order. *Id.* at 24–28.

[54] *Id.* at 25.

[55] Opp'n – ECF No. 209 at 25.

[56] *Id.* at 26 (citing SAC – ECF No. 198 at 37 (¶ 112), 65 (¶ 254)).

[57] SAC – ECF No. 198 at 24–25 (¶¶ 72–73).

For breach of the duty of loyalty (claim five against Stepanis, Patel, Kidder, Longo, Hanlon, and Andersen), California law allows a claim, and North Carolina law does not.[58] There is a conflict implicating a choice-of-law analysis. *Dalton v. Camp*, 353 N.C. 647, 651–53 (2001).

California applies the governmental-interest test. *Kearney v. Salomen Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006). Under that test, the party seeking application of the foreign law has the burden of showing that each jurisdiction has an interest in the application of its own law and that the foreign state's interest would be more impaired by the application of California law than California's interest would be by the application of foreign law. *Id.*

The defendants have met that burden. First-Citizens is a North Carolina corporation with its principal place of business there.[59] North Carolina has a strong interest in defining the duties owed to its corporate residents and in not expanding those duties beyond what its own law recognizes. California's law in this dispute is comparatively limited, given that First-Citizens is a North Carolina corporation, and the duty alleged is one running to it, not from it. While California has an interest in regulating conduct regarding its employees within its borders, that interest is not strong when, as here, the duty in question is owed to an out-of-state employer with no California interest of its own to vindicate. *Cf. Hite v. Triton Energy Ltd.*, 35 F. App'x 434, 438 (9th Cir. 2002), *as amended* (June 5, 2002). North Carolina law therefore governs, and the claim fails.

Even if California law applied, the breach-of-loyalty claim fails. California law permits employees to prepare to compete before resigning. *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007). The SAC alleges that during the brief period before their departures, the individual employees attended planning meetings, learned about Project Colony, and discussed recruitment.[60] Paragraph 92 of the SAC catalogs the misconduct, but each item is part of the scheme to misappropriate trade secrets and confidential information.[61] Stripped of the trade-secret allegations, what remains is permissible preparation to compete. The claim fails under California law.

---

[58] Order – ECF No. 105 at 24.

[59] SAC – ECF No. 198 at 8 (¶ 10).

[60] *See supra* Section 2.2.

[61] SAC – ECF No. 198 at 29–30 (¶ 92).

United States District Court
Northern District of California

Because the breach of loyalty claim fails, aiding and abetting it (claim six against the HSBC defendants and Sabow) fails too. *Karma Auto, LLC v. Lordstown Motor Corp.*, No. SACV 20-02104 JVS (DFMx), 2022 WL 17886045, at *18 (C.D. Cal. Nov. 18, 2022). First-Citizens does not allege that the named defendants knew of the alleged duty of loyalty for the defendants named in claim five.

For tortious interference with prospective economic advantage (claim eight against all defendants), the court dismissed the claim because there was no independently unlawful conduct beyond the hiring of SVB employees.[62] The allegations remain conclusory and do not explain how relationships (such as customer relationships) were jeopardized.[63] That detail is required to adequately plead a claim. *Seoul Laser Dieboard Sys. Co. v. Serviform*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013) (dismissing claim for failure to identify an opportunity lost).

For civil conspiracy (claim ten against all defendants), the claim is identical to the claim that the court dismissed previously and is dismissed here for the same reasons.[64]

For the claim of unfair and deceptive trade practices in violation of North Carolina law (claim nine against all defendants), First-Citizens contends that the defendants engaged in unfair or deceptive acts affecting North Carolina commerce by misappropriating its trade secrets, inducing the mass departure of its employees, and engaging in a coordinated campaign to disrupt its business.[65] The defendants respond that the SAC does not adequately connect the challenged conduct to North Carolina or plead an in-state injury.[66] The complaint does not cure the deficiencies identified in the earlier order: it does not allege any facts about substantial in-state injury and primarily identifies injury in California.[67] It does not allege proximate causation.

In sum, the SAC does not plausibly plead facts other than those intertwined with the trade-

---

[62] Order – ECF No. 105 at 25–26 (setting forth the full legal standard).

[63] *Id.* at 26.

[64] *Id.*

[65] Opp'n – ECF No. 209 at 28–29.

[66] Reply – ECF No. 225 at 17.

[67] Order – ECF No. 105 at 27–28 (setting forth the full legal standard); SAC – ECF No. 198 at 13–14 (¶ 25), 71–72 (¶ 291).

secret allegations. CUTSA preempts the tort claims.

### 3.2    Breach of Employment Agreements (Claim Two)

First-Citizen charges Sabow, Patel, Stepanis, Longo, and Hanlon in claim two with breach of their employment contracts. The earlier order upheld the contract claim against Sabow but not against the other defendants. Nothing in SAC materially alters the earlier conclusion that the allegations against the employees (other than Sabow) are only that they attended meetings, resigned, and contacted employees to participate in recruitment calls. These do not plausibly plead breach of the solicitation provision.[68] Instructing recruits to not disclose that HBUS was their new employer is similar conduct that does not change this conclusion.[69]

First-Citizens also alleges that Patel violated the agreement by sending Sabow confidential information on March 14 and 16, 2023, in violation of the agreement's prohibition of using information except for the benefit of the company or disclosing it outside the company unless authorized.[70] Under the agreement, Patel permissibly sent information to Sabow, an SVB UK employee. HBUK's acquisition of SVB UK on March 13 does not reasonably change this analysis or subject Patel to liability.[71]

First-Citizens also alleges that Patel, Hanlon, Stepanis, and Longo are prohibited from selling competitive product lines if doing so would lead to the use of trade secrets or confidential information or give a competitive advantage over the company.[72] There is no allegation that they sold product lines or disclosed trade secrets.[73]

The claim is dismissed except against Sabow.

---

[68] Order – ECF No. 105 at 26–27; Order – ECF No. 71 at 15–16 (the solicitation provision); Opp'n – ECF No. 204 at 35–38.

[69] SAC – ECF No. 198 at 39 (¶ 119).

[70] *Id.* at 48 (¶ 167); Agreement – ECF No. 1-9 at 2 (¶ 3(a)).

[71] Reply – ECF No. 225 at 20 (making this argument more fully in the context of the entire timeline).

[72] Agreements – ECF Nos. 1-8 at 5 (¶ 9), 1-9 at 5 (¶ 9), 1-10 at 5 (¶ 8), 1-11 at 5 (¶ 8), 1-12 at 5 (¶ 9).

[73] Mot. – ECF No. 199 at 29 (making this argument).

ORDER – No. 23-cv-02483-LB              17

### 3.3    DTSA (Claim Three)

First-Citizens charges Sabow, Patel, Anderson, and the HSBC defendants in claim three with theft of trade secrets, in violation of DTSA.[74] The earlier orders allowed a trade-secret claim to proceed against HBUS, SVB UK, and Sabow.[75] The defendants challenge the claim only as alleged against HSBC Holdings, HBUK, Patel, and Andersen.[76]

The SAC does not plausibly allege actionable acquisition, use, or disclosure by the entities and instead alleges only participation in strategic discussions.[77] First-Citizens argues that it is reasonable to infer that Quinn, Stuart, and Tait used or disclosed specific trade secrets in the Project Colony pitch when deciding whether to bid on SVB assets or hire former SVB employees.[78] But the SAC alleges that that decision was in response to Elhedery's email, not Project Colony. The email recommends against an SVB asset purchase as too costly.

Similarly, against Patel and Andersen, the SAC does not plausibly plead that either improperly acquired, disclosed, or used trade secrets. The SAC does not allege that the new allegations about Anderson's retained emails qualify as a trade secret.[79] The claim against Patel fails for the reason (discussed above) that she was authorized to share the information with Sabow.

### 3.4    Breach of New-Hire Agreements (Claim Four)

First-Citizens charges Patel, Kidder, Longo, Hanlon, and Andersen in claim four with breach of their new-hire agreements. The relevant policy requires employees to maintain confidentiality of information about customers, not compete while employed, and alert First-Citizens if they suspect an illegal or unethical act that may involve the company. The court previously dismissed the claim because there was no actionable conduct by attending recruitment meetings and resigning. In particular, the order held that knowledge of trade secrets and a subsequent resignation did not plead

---

[74] SAC – ECF No. 198 at 49–59 (¶¶ 182–216).

[75] Order – ECF No. 71 at 1–4; Order – ECF No. 105 at 1–4.

[76] Mots. – ECF Nos. 199 at 30–31 & 200 at 29–30.

[77] *See supra* Section 2.1 (discussing fact allegations).

[78] Opp'n – ECF No. 209 at 29.

[79] SAC – ECF No. 198 at 31–32 (¶ 96).

ORDER – No. 23-cv-02483-LB                18

a breach of the contract.[80] *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SACV 19-220 JVS (JDEx), 2019 WL 6655274, at *9 (C.D. Cal. Sep. 23, 2019).

The allegations in the SAC are only that the defendants signed the forms, participated in recruitment meetings, invited other employees to attend, reported about employee concerns about moving to HBUS, and like concerns.[81] The allegations do not differ materially from allegations that were previously held inadequate. Claim four is dismissed.

### 4. Breach of the FDIC Confidentiality Agreement (Claim One)

First-Citizens charges HBUS in claim one with a breach of the FDIC's confidentiality agreement, assigned by the FDIC to First-Citizens in 2025, based on HBUS's alleged use of information from the FDIC's virtual data room to hire employees, not consider a bid to purchase Bridge Bank assets.[82] The agreement prohibits solicitation of Bridge Bank employees "who became known" to HBUS "in the course of considering a Bid" for Bridge Bank assets or liabilities.[83] First-Citizens argues that this provision restricts HBUS's solicitation of any employee, even if identified through independent channels.[84] HBUS responds that the only reasonable reading of the provision is that it prohibits only information known through confidential information shared by the FDIC.[85] Assuming the assignment is valid, the SAC does not plausibly plead its breach.

The agreement bars solicitation of Bridge Bank employees who became known to HBUS "in the course of considering a Bid." The natural reading of that language is that it restricts solicitation of employees identified through the FDIC's confidential bid process, not solicitation of employees identified through any independent channel. The SAC itself supplies the answer: Sabow, an SVB

---

[80] Order – ECF No. 105 at 27.

[81] SAC – ECF No. 198 at 28 (¶ 88), 29–30 (¶ 92), 32–33 (¶¶ 97–99), 53–55 (¶¶ 194–97), 59–60 (¶¶ 220–21), 62 (¶ 236).

[82] *Id.* at 45–46 (¶¶ 154–160); Opp'n – ECF No. 204 at 33–34.

[83] Agreement, Ex. 3 to SAC – ECF No. 198-2 at 4 (¶ 3).

[84] Opp'n – ECF No. 204 at 33–34.

[85] Reply – ECF No. 225 at 27.

ORDER – No. 23-cv-02483-LB                19

UK executive, identified and targeted the employees, and he did so independently of the FDIC's data room. The agreement is not breached when HBUS solicits an employee whose identity HBUS already had through Sabow.

Independently, the agreement caps remedies at liquidated damages, foreclosing the request in the SAC for actual damages.[86]

## CONCLUSION

The motions to dismiss are granted. The surviving claims are claim two for breach of contract (against Sabow) and claim three for theft of trade secrets (against Sabow, HBUS, and SVB UK).

**IT IS SO ORDERED.**

Dated: May 27, 2026

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[86] *Id.* at 28; Agreement, Ex. 3 to SAC – ECF No. 198-2 at 6 (¶ 14) ($250,000 identified as liquidated damages).

ORDER – No. 23-cv-02483-LB                    20